Barry MASON, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (JOY MINING MA-
CHINERY AND AIG CLAIM SER-
VICES), Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 15, 2008.
Decided March 18, 2008.

Walter F. Lober, III, Pittsburgh, for petitioner.

Harry J. Klucher and Lee Ann Rhodes, Pittsburgh, for respondent, Joy Mining Machinery.

BEFORE: LEADBETTER, President Judge, PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Barry Mason (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) holding that his failure to apply for suitable alternative employment after his forced retirement justified suspension and not modification of benefits as the Workers' Compensation Judge (WCJ) ordered, because, by doing so, he had removed himself from the workforce. Claimant contends that suspension is unwarranted because he established that he was seeking employment.

Claimant was employed by Joy Mining Machinery (Employer) as a welder, and his duties, besides welding, included burning and fabrication. On August 13, 1992, Claimant sustained a work-related injury to his right knee when he slipped while welding a large piece of machinery. He began receiving total disability benefits pursuant to a notice of compensation payable dated April 12, 1994, but those benefits were modified to partial when he returned to work in August 1994. Claimant subsequently received total disability benefits in January 1995 for a work-related tear of the medial meniscus in his left knee. He returned to work on February 17, 1996, at which time his benefits were modified to the partial disability rate. Claimant's benefits were suspended on March 1, 2000, but he did not contest this suspension. On August 2, 2002, Claimant stopped working altogether because he underwent left knee replacement surgery, and Employer reinstated his disability benefits at the rate of $509 per week.[1] He also underwent a similar surgery for his right knee approximately five months later.

Claimant was released by Employer's doctor, Trenton M. Gause, M.D. (Dr. Gause), a board certified orthopedic surgeon, to perform medium-duty work. Claimant desired to return to his prior position with Employer, even though he knew it entailed tasks that were more rigorous than what was considered medium-duty work. After Employer decided not to reinstate Claimant or offer him other positions, he filed for a disability pension through Employer, which was granted. His last day on Employer's roster of active employees was July 31, 2005.

---

1. Although Employer reinstated Claimant's total disability benefits, there was no supplemental agreement issued documenting the change in his status.

In May 2005, while still employed by Employer, Claimant met with Martin Bright (Bright), a vocational rehabilitation counselor, to discuss potential job openings available to him within his physical work restrictions. Bright referred Claimant to a position as an auto glass installer, two janitorial positions, two telemarketing positions, and an operator at a call center. On January 24, 2006, alleging that work was available to Claimant but that he elected to remove himself from the workforce, Employer filed a petition to modify or suspend his disability benefits. Claimant filed a timely answer denying that work was available to him within his physical restrictions, and the matter was assigned to a WCJ.

To establish that work was available to Claimant within his physical restrictions that he failed to pursue, Bright testified that he first notified Claimant about a position as an auto glass installer with Safelite Auto Glass (Safelite). Bright stated, though, that Claimant never appeared to interview for that position. Rather, in a subsequent feedback letter, Claimant told Bright that he did meet the manager of Safelite, was told that the business was out of applications, and that he should attempt to re-contact her. Bright stated that the manager confirmed this account, but added that Claimant never re-contacted her. The next position Bright located was as a residential cleaner with Cinderella's Cleaning Service (Cinderella's) but that Claimant was not hired because he gave Cinderella's manager the impression that he did not want the position because he talked at length about his disabilities and how it would not behoove him financially to return to work. Bright then found four more openings—an operator at a call center, a janitorial position and two telemarketing jobs—but Claimant either failed to submit an application to the employer or appear for the interviews. Bright testified

that every job referral was within Claimant's vocational and physical capabilities, and that Dr. Gause approved of each of them as being within Claimant's physical work restrictions. Based on Claimant's conduct in pursuing the job referrals, Bright opined that Claimant had not responded to the leads in good faith because Claimant stated that he would have to forfeit his social security disability benefits as well as his Employer-funded disability pension if he returned to work.

Employer also offered the testimony of Dr. Gause who stated that based on his exam, Claimant did require some work restrictions, including sitting limited to six hours; standing/walking/driving limited to five hours; lifting and carrying frequently only up to 20 pounds, with occasional lifting up to 50 pounds; and no crawling, occasional climbing and frequent bending/squatting/reaching/twisting. He opined that Claimant could perform medium-duty work, but he did not release Claimant back to his prior position as a welder because he had not fully recovered from his knee injuries. Dr. Gause also confirmed that the job leads presented to Claimant by Bright were within the limits of his physical capabilities.

In opposition, Claimant testified that when he underwent his knee surgeries, Employer placed him on total disability and paid for the surgeries. He stated that after being released to medium-duty work by Dr. Gause, he contacted Employer about returning to his prior position, but following a meeting with two supervisors and a union representative, he was not reinstated due to the bending and stooping that would have been required. Claimant then contacted Employer's Benefit Administrator, Diane Kemick (Kemick), to file for his disability pension. He explained that his understanding from talking to Kemick was that if he were to work elsewhere, he

would lose his pension. However, he testified that when he accepted his disability pension, he did plan on returning to work, but stated that it depended on how good the salary was at the new position.

With regard to Bright's job referrals, Claimant testified that he applied for each opening for which he received notice except the janitorial position, because by the time he learned of that job, he had already been informed about the possibility of losing his pension benefits. He stated that he appeared at Safelite, but was informed that it did not have applications on hand, and although he gave his contact information, Safelite never re-contacted him. As for Cinderella's, Claimant was unable to recall whether he had submitted a résumé and cover letter to the employer as directed by Bright. He denied having received any of Bright's job referral letters for either the operator or one telemarketer position which he attributed to a disruption in his mail service due to the paving of a road in front of his house. Claimant also stated that he submitted job applications for welding positions, fabrication jobs and supervisory jobs. While some of these positions were located far from his residence, others were within a reasonable driving distance, and Claimant would have relocated if hired. He further reiterated his belief that if he took a job while he was collecting his disability pension, he would forfeit that pension and not be eligible for it until he qualified by age to take a regular retirement pension.

Determining that the testimonies of Bright and Dr. Gause were unrefuted and Claimant's testimony that he did not receive certain job referrals from Bright to not be credible, the WCJ found that

Claimant had an earning capacity and was capable of performing medium-duty work. Because he failed to respond in good faith to suitable employment opportunities either because they were low paying jobs or he would lose his social security disability pension as well as his Employer-funded disability pension if he accepted those positions, the WCJ modified benefits. The WCJ also found that Employer had not sustained its burden to suspend Claimant's benefits by showing that he left the workforce because Claimant filed for his disability pension after Employer "refused" to allow him to return to work.

Employer appealed to the Board, arguing that the WCJ erred in not suspending Claimant's benefits because he had retired and taken himself out of the workforce as evidenced by his failure to follow through with job referrals in good faith. Agreeing with Employer, the Board stated that by failing to pursue the jobs referred to him, the burden shifted to Claimant to show that he had not voluntarily withdrawn from the entire labor market and was open to employment within his physical capabilities. Because the WCJ found that Claimant failed to respond in good faith to suitable employment within his physical restrictions and location, the Board concluded that he was unable to meet his burden for continued benefits. It vacated the WCJ's modification of Claimant's benefits and reversed his decision denying a suspension of Claimant's benefits. This appeal by Claimant followed.[2]

Claimant contends that the Board erred in reversing the WCJ and suspending benefits because he did not voluntarily remove himself from the workforce, given that Employer refused to reinstate him to his

---

2. Our scope of review of the Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Kelly v. Workers' Compensation Appeal Board (U.S. Airways Group, Inc.)*, 935 A.2d 68 (Pa.Cmwlth.2007).

former position and he made himself available for some job referrals and searched for employment similar to his prior position with Employer on his own accord.

■ Normally, to establish a claimant's earning power, an employer must demonstrate suitable employment was made available to a claimant. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). However, an employer is not required to offer suitable alternative employment when a claimant has left the workforce having no intention of working because the claimant would not accept it when proffered. Where, as here, a claimant accepts a pension, our Supreme Court, in *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson)*, 543 Pa. 74, 669 A.2d 911 (1995), held that by voluntarily accepting a pension, a claimant is presumed to have left the workforce unless the claimant can show otherwise, stating:

> It is clear that disability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement. The mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability. An employer should not be required to show that a claimant has no intention of continuing to work; such a burden of proof would be prohibitive. *For disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury.* (Emphasis added.)

*Id.*, 543 Pa. at 78, 669 A.2d at 913. Under *Henderson* then, to overcome the presumption that he has left the workforce, a claimant who accepts a pension must establish that (1) he is seeking employment or (2) the work-related injury forced him to retire. Once a claimant establishes either, the employer can only modify benefits by offering suitable alternative employment.

■ To show that he has not left the workforce under the second part of the *Henderson* test, a claimant has to establish that he was incapable of working at any job in the entire labor market, not just that he was incapable of performing his pre-injury position. *County of Allegheny v. Workers' Compensation Appeal Board (Weis)*, 872 A.2d 263 (Pa.Cmwlth. 2005); *Pries v. Workers' Compensation Appeal Board (Verizon Pennsylvania)*, 903 A.2d 136 (Pa.Cmwlth.2006). The other way under *Henderson* that a claimant can establish that he has not left the workforce is to show that he is seeking employment by engaging in a good faith job search. A claimant does not have to show that he is attempting to secure employment in all job areas, but only for those jobs that are within his physical limitations or not unsuitable for other valid reasons. For example, a personal reason not to seek a job would be one that causes the claimant to "forfeit a qualitative benefit," but he cannot refuse to look for employment if merely required to "temporarily" forego a benefit. *City of Philadelphia v. Workers' Compensation Appeal Board (Szparagowski)*, 574 Pa. 372, 831 A.2d 577 (2003).

■ Moreover, when a claimant does not take suitable alternative employment proffered by an employer, that does not necessarily mean that the claimant has left the workforce as the Board found in this appeal; all it means is that the claimant failed to apply for those jobs because he found those jobs personally unappealing. If evidence accepted by the WCJ leads to the conclusion that a claimant, whose

work-related injury forced him to accept a pension, is otherwise engaged in a good faith job search, then the claimant cannot be found to have left the workforce and cannot allow for the suspension of benefits. Nonetheless, because a claimant is not entitled to refuse a job otherwise suitable because he finds it unappealing, an employer is entitled to a modification of benefits if the claimant refuses to apply or take a personally unappealing job. *Hendry v. Workmen's Compensation Appeal Board (Miller & Norford, Inc.)*, 133 Pa. Cmwlth.28, 577 A.2d 933 (1990).

In this case, Claimant attempted to shift the burden back to Employer to show that suitable alternative employment existed by establishing that he was seeking employment by submitting job applications for welding positions, fabrication jobs and supervisory jobs, and that he would have relocated to positions not within a reasonable driving distance if hired. Because the WCJ incorrectly found that Claimant had not left the workforce on the mistaken belief that, under *Henderson*, all Claimant had to show was that his work-related injury forced him to retire, the WCJ did not go on to make findings as to whether Claimant established that he was, in good faith, seeking employment following his retirement. Accordingly, we vacate the Board's decision and remand to the WCJ to make those findings necessary to determine whether Claimant has left the workforce.[3]

### ORDER

AND NOW, this *18th* day of *March*, 2008, the order of the Workers' Compensation Appeal Board, No. A07–0492, is vacated, and the matter remanded for findings on whether Barry Mason established that he was seeking employment following his retirement from Joy Mining Machinery in good faith.

Jurisdiction relinquished.

---

3. Because we are vacating the Board's order, which had vacated the WCJ's modification of Claimant's benefits and instead suspended benefits, the WCJ's order modifying benefits is reinstated by our disposition of the case pending resolution of the Court's remand order. Indeed, Claimant does not dispute that Employer, at a minimum, is entitled to a modification of benefits based on Claimant's failure to follow up on job referrals. Depending on the WCJ's findings on remand, Claimant's benefits will either continue, as modified by the WCJ, or be suspended.