**DEPARTMENT OF PUBLIC WELFARE/NORRISTOWN STATE HOSPITAL, Petitioner**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (ROBERTS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 10, 2010.

Decided June 21, 2011.

Publication Ordered Oct. 14, 2011.

John B. O'Brien, Philadelphia, for petitioner.

Kenneth S. Saffren, Jenkintown, for respondent.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

Before this Court is the Petition for Review of the Department of Public Welfare/Norristown State Hospital (Employer) from the Order of the Workers' Compensation Appeal Board (Board) affirming the Order of the Workers' Compensation Judge (WCJ), which denied Employer's Petition to Modify Compensation Benefits (Modification Petition) and Petition to Suspend Compensation Benefits (Suspension Petition) and granted partial attorney's fees to Gregory Roberts (Claimant). Employer argues that the Board erred in holding that: (1) Claimant did not voluntarily withdraw from the workforce; (2) Employer's labor market survey did not provide sufficient basis to modify Claimant's benefits; and (3) Employer's contest was unreasonable.

Claimant worked for Employer as a houseparent at Employer's Youth Development Center for approximately 20 years. In the course of his employment, Claimant previously suffered injuries to his cervical and lumbar spine on June 6, 1997, and March 31, 1998. Claimant suffered a third injury on September 3, 1998, injuring his neck, after which Claimant did not return to work in any capacity.

Employer requested an Independent Medical Examination (IME) of Claimant, which was performed on June 5, 2003 by Richard Levenberg, M.D. On the basis of Dr. Levenberg's IME, which found Claimant to be capable of full-time sedentary work, Employer filed a Notice of Ability to Return to Work (Notice of Ability) on June 26, 2003. On June 22, 2004, Employer filed the Modification Petition based on a labor market survey conducted by Michael J. Kibler. On June 24, 2004, Employer filed the Suspension Petition seeking to suspend Claimant's benefits as of June 15, 1999,[1] on the grounds that Claimant voluntarily left the labor market at that time.

The Modification Petition and Suspension Petition were assigned to the WCJ, who held a hearing on April 12, 2005. At the hearing, Employer introduced the deposition testimony of Mr. Kibler and Dr. Levenberg. Claimant introduced his own testimony, as well as the deposition testimony of his medical expert, Jerry Murphy, M.D.

Employer presented the deposition testimony of Dr. Levenberg and Mr. Kibler. Dr. Levenberg opined that Claimant suffered from myelopathy of his cervical spine and compression of the spinal cord from C4–C6. Dr. Levenberg stated that Claimant should be monitored to determine whether cervical intervention was necessary. Dr. Levenberg opined that Claimant could return to full-time, sedentary work. Mr. Kibler, a vocational counselor certified by the Workers' Compensation Bureau, testified that he conducted a vocational interview with Claimant on February 6, 2004. On the basis of this interview, Mr. Kibler identified positions within the restrictions set out by Dr. Levenberg, including a security guard, a hotel desk clerk, and a bank teller.

Claimant testified regarding the incidents that resulted in his injuries and stated that his last day of work with Employer was September 3, 1998. (WCJ Hr'g Tr. at 9, R.R. at 48a.) Claimant testified that he was 51 years old when he stopped working for Employer and, because he had more than 20 years of service with Employer, he took a retirement pension. (WCJ Hr'g Tr. at 7–8, R.R. at 46a–47a.) Claimant also stated that he began taking a Social Security Disability pension shortly after he began taking his retirement pension. (WCJ

---

1. It is unclear why Employer sought to suspend benefits as of this precise date.

Hr'g Tr. at 8, R.R. at 47a.) Claimant testified that he did not believe he could work due to his symptoms and medications:

> because, first of all, I'm in a lot of pain. I take a lot of pain medication. I just can't. My focus is all messed up. I can't think too good. I keep forgetting a lot of things. And, things are not normal to me now. I'm in a[n] awful lot of pain.

(WCJ Hr'g Tr. at 16, R.R. at 55a.)

In his deposition testimony, Dr. Murphy testified that Claimant had compressive lesions in his cervical spine, cervical neuropathy, and lumbar sprain and strain. Dr. Murphy opined that Claimant's condition would require surgical intervention in the future. Dr. Murphy also opined that Claimant was not capable of working in the positions identified by Mr. Kibler.

At the hearing, the WCJ questioned Employer's counsel extensively regarding whether, despite the fact that the facility at which Claimant had worked had closed, Employer could not offer Claimant some position within Claimant's limitations, given that Employer is a large department of the Commonwealth. (WCJ Hr'g Tr. at 24–28, 37, R.R. at 63a–67a, 76a.)

The WCJ issued his determination on April 5, 2006. The WCJ credited Dr. Levenberg's opinions over Dr. Murphy's opinions and found that Claimant was capable of sedentary work. (WCJ's Determination, Finding of Fact (FOF) ¶ 4, April 5, 2006.) The WCJ also found Claimant to be credible. (FOF ¶ 8.) The WCJ concluded that Claimant did not voluntarily withdraw from the workforce because Claimant's choice to take a retirement pension was an economic decision. (WCJ's Determination, Conclusions of Law (COL) ¶ 2.) The WCJ also concluded that Claimant

was capable of sedentary work and that Claimant received the Notice of Ability. (COL ¶ 3.) The WCJ determined, however, that Employer failed to carry its burden for modifying Claimant's benefits based on Mr. Kibler's labor survey because "it is inconceivable that somewhere within the Department of Public Welfare, no position exists within Claimant's abilities," and that an employer is required to offer a claimant a job vacancy with the employer that the claimant can perform pursuant to Section 306(b)(2) of the Workers' Compensation Act (Act),[2] 77 P.S. § 512(2). (COL ¶ 4.) Finally, the WCJ awarded unreasonable contest attorney's fees to Claimant. (COL ¶ 6.)

Employer appealed the WCJ's decision to the Board. Citing *Armstrong World Industries v. Workers' Compensation Appeal Board (Evans),* 703 A.2d 90 (Pa. Cmwlth.1997), the Board held that Claimant's retirement did not mean that he had left the workforce, only Employer. Therefore, the Board affirmed the WCJ's conclusion that Claimant did not voluntarily withdraw from the workforce. However, the Board also concluded that the WCJ erred in taking judicial notice that positions were available with Employer and remanded the matter "for the presentation of evidence concerning the availability of [positions with Employer] within the appropriate geographic area." (Board Decision at 4, May 29, 2007.)

On remand, the WCJ did not take new evidence, but based on briefs by the parties and the established record, found, with regard to Mr. Kibler's labor market survey, that:

> Mr. Kibler testified that he located a number of positions for Claimant in an appropriate geographic area that were approved by Dr. Levenberg. A thor-

**2.** Act of June 2, 1915, P.L. 736, *as amended.*

ough review of his report (attached to the deposition of Dr. Levenberg) reveals no specific jobs that were identified as available, but merely discusses jobs in broad generalities with no mention of part time. The witness further indicated, on cross-examination, the fact that Claimant receives social security disability would have no impact on his ability to return to work, nor would his age (57). I find the views of Mr. Kibler to be less than credible, and they are specifically rejected, when held up against Claimant's own opinion concerning his inability to return to a full-time position in the workforce.

(FOF ¶ 2, November 26, 2008.) With respect to Claimant, the WCJ stated:

I have reviewed Claimant's testimony, and again find him credible to the extent that he is unable to work at this time because of continuing pain as well as his reactions to the medications he takes.

(FOF ¶ 3.) The WCJ concluded that he lacked jurisdiction to review again the merits of the Suspension Petition, because the Board had already affirmed that aspect of his prior decision. (COL ¶ 2, November 26, 2008.) The WCJ denied the Modification Petition on the basis that Claimant was unable to perform the jobs identified therein. (COL ¶ 3.) The WCJ held that Employer's contest regarding the Modification Petition was reasonable and, therefore, halved the attorney's fees he previously had awarded. (COL ¶¶ 4–5.)

Employer again appealed to the Board. The Board affirmed the WCJ's decision on remand on the basis that Employer "failed to establish the existence of any specific positions that were actually available to Claimant." (Board Decision at 4, July 28, 2010.) The Board again rejected Employer's arguments regarding the Suspension Petition, stating that these issues had been fully resolved in the Board's prior decision. (Board Decision at 8.) The Board also affirmed the WCJ's apportionment of attorney's fees between the Suspension Petition and Modification Petition. (Board Decision at 9.) Employer now appeals to this Court.[3]

Before this Court, Employer argues that: (1) the Board erred in denying the Suspension Petition because Claimant retired, and the WCJ's finding on remand that Claimant was totally disabled was beyond the scope of the Board's remand; (2) the Board erred in denying the Modification Petition because the WCJ and the Board improperly required Employer to show that it did not have available positions before considering Mr. Kibler's labor market survey; and (3) the WCJ erred in awarding unreasonable contest fees when Employer's contest on both petitions was reasonable.

■ We first address Employer's argument that the Board erred in denying the Suspension Petition because Claimant retired, thereby voluntarily withdrawing from the workforce. Generally, in order to suspend benefits, an employer must show: (1) that the claimant's medical condition has changed; and (2) either that the claimant has been referred to open positions and failed to follow through in good faith, or that work is generally available within the claimant's restrictions in the claimant's geographic area by introducing a labor market survey. *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson),* 4 A.3d 1130, 1134 (Pa.Cmwlth. 2010) (en banc), *petition for allowance of*

---

**3.** This Court's "scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence." *Pizza Hut v. Workers' Compensation Appeal Board (Mahalick),* 11 A.3d 1067, 1069 n. 1 (Pa.Cmwlth.2011).

*appeal granted,* —— Pa. ——, 17 A.3d 917 (2011) (citing 77 P.S. § 512(2); *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 252, 532 A.2d 374, 380 (1987); *South Hills Health System v. Workers' Compensation Appeal Board (Kiefer),* 806 A.2d 962, 966 (Pa.Cmwlth.2002)). In *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson),* 543 Pa. 74, 669 A.2d 911 (1995), the Pennsylvania Supreme Court held that if an employer can show that the claimant has voluntarily withdrawn from the workforce by retiring, the employer does not need to show that the claimant has been referred to open positions and failed to follow through or that work is generally available within the claimant's restrictions in the claimant's geographic area. *Id.* at 79, 669 A.2d at 913. Once an employer establishes that a claimant has retired, the burden then shifts to the claimant to show that he is still seeking employment after retirement or that he was forced to withdraw from the workforce due to his work-related injury. *Id.* Employer argues in this case that Claimant retired because he accepted a retirement pension. However, in *Robinson,* this Court stated that "[i]n determining whether acceptance of a pension should create a presumption that a claimant has terminated her career, it is important to look at the facts involved and the type of pension." *Robinson,* 4 A.3d at 1137. "[I]n order to prove that a claimant has retired for purposes of the *Henderson*

standard, the 'employer must show, by the totality of the circumstances, that the claimant has chosen not to return to the workforce.' " *Day v. Workers' Compensation Appeal Board (City of Pittsburgh),* 6 A.3d 633, 639 (Pa.Cmwlth.2010) (en banc) (quoting *Robinson,* 4 A.3d at 1138).

█ The totality of the circumstances found by the WCJ in this case show that Claimant voluntarily withdrew from the workforce. Claimant has not worked since his last work-related injury on September 3, 1998. (FOF ¶ 1, April 5, 2006; WCJ Hr'g Tr. at 9, 15, R.R. at 48a, 54a.) Soon after he stopped working for Employer, Claimant applied for and received a retirement pension from Employer and a Social Security Disability pension. (FOF ¶ 8; WCJ Hr'g Tr. at 7–8, 39, R.R. at 46a–47a, 78a.) Claimant's counsel agreed that Claimant cannot work and still receive his Social Security Disability pension. (WCJ Hr'g Tr. at 9, R.R. at 48a.) The parties agreed that Claimant received the Notice of Ability sometime around June 26, 2003. (FOF ¶ 6; WCJ Hr'g Tr. at 3, February 8, 2005.) The Notice of Ability informed Claimant that he was cleared to perform full-time, sedentary work and that he had "an obligation to look for available employment." (Notice of Ability.) Claimant did not testify that he ever attempted to find work, but stated that he did not believe he could work. (FOF ¶ 8; WCJ Hr'g Tr. at 15–16, R.R. at 54a–55a.) The WCJ, however, found that for the purposes of the Suspension Petition, Claimant was capable of full-time, sedentary work. (FOF ¶ 4.)[4]

---

**4.** On remand, with regard to the Modification Petition, the WCJ found that Claimant was unable to work on the basis of Claimant's testimony that he believed he was unable to work. (FOF ¶ 3, November 26, 2008.) However, the Board remanded the matter to the WCJ *solely* to make findings of fact and resolve issues related to the Modification Petition. (Board Decision at 10, May 29, 2007.)

When Employer subsequently appealed the issue of the Suspension Petition to the Board after the remand to the WCJ, the Board stated that the issue of the Suspension Petition had been resolved by its May 29, 2007 opinion. (Board Decision at 8, July 28, 2010.) Therefore, the WCJ's findings of fact on remand are not relevant to the Suspension Petition. Moreover, on remand, a WCJ must limit him-

Here, where Claimant sought and received a retirement pension and a disability pension that precluded him from working, received the Notice of Ability which informed him he was capable of sedentary work almost two years before Employer filed its Suspension Petition, and Claimant did not look for work, the totality of the circumstances indicate that Claimant had retired and voluntarily withdrew from the workforce. Claimant did not rebut this conclusion by showing that he was still looking for work or that his work-related injury forced him from the entire workforce. Therefore, pursuant to *Day* and *Robinson,* the Board erred in denying Employer's Suspension Petition. However, as noted above in footnote 1 of this opinion, it is unclear from the record why Employer chose June 15, 1999, as the date from which to seek suspension of Claimant's benefits. Therefore, although we reverse the order of the Board insofar as it denies Employer's Suspension Petition, we remand to the Board to determine from the record before it the date Claimant's benefits should be suspended.

Because Claimant's benefits are suspended, the Board's disposition of the Modification Petition is moot, and we do not reach the issues raised by Employer regarding that petition. Furthermore, because Employer has prevailed on the Suspension Petition, we reverse the Order of the Board insofar as it awards unreasonable contest attorney's fees to Claimant.

### ORDER

**NOW,** June 21, 2011, the Order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is hereby **REVERSED** insofar as it denies Petitioner Department of Public Welfare/Norristown State Hospital's (Employer) Petition to Suspend Compensation Benefits and insofar as it awards attorney's fees to Gregory Roberts (Claimant); this matter is hereby **REMANDED** to the Board to determine, based on the established record, the date from which Claimant's benefits should be suspended; and the Order is hereby **VACATED AS MOOT** insofar as it denies Employer's Petition to Modify Compensation Benefits.

Jurisdiction relinquished.

---

self to the scope of the Board's remand. *Clark v. Workers' Compensation Appeal Board (Wonder Bread Co.),* 703 A.2d 740, 743 (Pa. Cmwlth.1997). The Board remanded the matter to the WCJ with the following instructions:

> Because we have determined that the [WCJ] erred in taking judicial notice that positions were available with [Employer], we must also agree with [Employer] that the *[WCJ] prematurely struck [Employer]'s vocational evidence of Claimant's earning power as irrelevant.* On remand, should the [WCJ] determine that no vacancies exist with [Employer] which Claimant is capable of performing, *the [WCJ] should reconsider [Employer]'s vocational evidence of Claimant's earning power.*

(Board Decision at 7, (emphasis in original) (quoting Board Decision at 5 n. 3, May 29, 2007).) These remand instructions did not direct the WCJ to make new findings regarding Claimant's ability to work; therefore, any such finding was beyond the scope of the remand. Additionally, in its decision after remand, the Board affirmed the WCJ's decision regarding the Modification Petition based upon the WCJ's finding that the jobs in the labor market survey were not actually available, not on the WCJ's remand finding that Claimant was unable to work. (Board Decision at 7.) Therefore, insofar as the WCJ found on remand that Claimant was not capable of working in any capacity, this finding was beyond the scope of the Board's remand.