**Susan BURKS, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PITTSBURGH), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 18, 2011.

Decided Jan. 13, 2012.

Reargument Denied March 6, 2012.

Pittsburgh Office of Municipal Investigations, http://www.city.pittsburgh.pa.us/omi/ (last visited Nov. 29, 2011).

Robert B. Woomer, Pittsburgh, for petitioner.

Patrick A. Sheldon, Pittsburgh, for respondents City of Pittsburgh and UPMC Benefit Management Services, Inc.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Susan Burks (Claimant) petitions for review of the May 3, 2011, order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of a workers' compensation judge (WCJ) to suspend Claimant's benefits because she voluntarily removed herself from the workforce. We affirm.

Claimant was diagnosed with a hip problem called Legg–Perthes disease when she was approximately twelve years old. (WCJ's Findings of Fact, No. 7(a).) As a result of this condition, Claimant's left leg was two and one-half inches shorter than her right leg. (WCJ's Findings of Fact, No. 2.) In addition, Claimant developed severe hip arthritis at an early age. (WCJ's Findings of Fact, No. 9(b).) Claimant underwent multiple surgeries for the problem, including a hip fusion and a hip replacement. (WCJ's Findings of Fact, No. 9(b), (h).)

On April 12, 1984, Claimant sustained a right knee sprain while in the course and scope of her employment with the City of Pittsburgh (Employer). She received workers' compensation benefits pursuant to a notice of compensation payable. (WCJ's Findings of Fact, No. 1.) Claimant subsequently underwent multiple right knee surgeries, including a right knee replacement that shortened her right femur to equalize her leg lengths. (WCJ's Findings of Fact, No. 9(c).) Claimant began receiving Social Security Disability benefits and has not worked, or looked for work, since 1984. (WCJ's Findings of Fact, No. 7(c).)

In 1985, Claimant injured her thoracic and lumbar spine in a motor vehicle accident. That same year, Claimant underwent an additional operation on her left hip. In 1990, Claimant was involved in another motor vehicle accident, which caused her left leg symptoms to increase. (WCJ's Findings of Fact, No. 2.) In 2005, Claimant filed a petition to review her medical treatment, seeking reimbursement for Bextra, a drug that she took for arthritis. (*Id.*) A WCJ denied the petition, find-

ing that Claimant's left hip pain, right hip pain, right ankle pain, low back pain, right shoulder pain and right abdominal pain were unrelated to the work injury to her right knee. (*Id.*)

On April 3, 2008, Claimant was examined by Jon B. Tucker, M.D., on behalf of Employer. Dr. Tucker diagnosed Claimant's work-related right knee condition as post-traumatic osteoarthritis, treated by a knee replacement. With regard to that work injury, Dr. Tucker believed that Claimant was capable of full-time, light-duty work. (WCJ's Findings of Fact, No. 9(e).) Dr. Tucker also believed that, taking all of Claimant's conditions into account, Claimant would be able to perform full-time sedentary work and probably some form of light-duty work. (WCJ's Findings of Fact, No. 9(f).) Based on Dr. Tucker's report, Employer filed a Notice of Ability to Return to Work on April 24, 2008, advising Claimant that she was released to return to a light-duty position and had an obligation to look for available employment. (WCJ's Findings of Fact, No. 10; Notice of Ability, R.R. at 7.)

On August, 27, 2008, Employer filed a petition to suspend Claimant's benefits, alleging that Claimant is physically capable of performing work, but Claimant has voluntarily removed herself from the workforce. (WCJ's Findings of Fact, No. 3.) Claimant filed an answer, stating that her treating physicians had not released her to return to work and that she was unable to work due to complications from her work injury. (WCJ's Findings of Fact, No. 5.) The petition was assigned to a WCJ, who held hearings on the matter.

At the hearings, Employer presented the deposition testimony of Dr. Tucker.

Claimant testified on her own behalf and presented the deposition testimony of Adrianna Wegrecki, M.D. Dr. Wegrecki opined that Claimant was unable to work as a result of her work injury. The doctor stated that Claimant's right knee surgeries led to Claimant needing crutches and using a wheelchair and that Claimant's inability to use her lower extremities caused carpal tunnel syndrome, severe back pain, chronic shoulder pain and chronic, progressive, degenerative joint arthritis in other joints. (WCJ's Findings of Fact, No. 8(e).)

After considering the evidence, the WCJ accepted Claimant's testimony that she has been receiving Social Security Disability benefits since 1984 and that she has not worked or sought work since then. The WCJ rejected Dr. Wegrecki's testimony that Claimant's right knee injury caused Claimant's other problems. The WCJ accepted Dr. Tucker's testimony that: (1) Claimant's work injury is limited to the right knee; (2) with respect to her work injury, Claimant is capable of performing full-time light-duty work; and (3) even with all of her medical conditions, Claimant is capable of performing sedentary work. (WCJ's Findings of Fact, Nos. 14, 18–19.) The WCJ concluded that, based on Claimant's admission that she has not sought work since 1984, Claimant has voluntarily withdrawn from the workforce. (WCJ's Conclusions of Law, No. 8.) Thus, the WCJ suspended her benefits. Claimant filed an appeal with the WCAB, which affirmed. Claimant now petitions this court for review.[1]

▪ Claimant argues that the WCJ and WCAB erred in relying solely on Claimant's admission that she has not sought

---

1. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

work since 1984 to conclude that she voluntarily removed herself from the workforce. We agree.

Claimant points out that, under *Keene v. Workers' Compensation Appeal Board (Ogden Corporation)*, 21 A.3d 243 (Pa. Cmwlth.2011), she had no duty to seek work until Employer showed that she had voluntarily withdrawn from the workforce. Indeed, "**a claimant has no duty to seek work until the employer meets its initial burden to show a voluntary retirement.** Until the employer proves a voluntary retirement, the employer has a duty to make job referrals to the claimant." *Id.* at 246 (emphasis in original) (footnote omitted). Thus, the WCJ and the WCAB erred in concluding that, based solely on the fact that Claimant had not sought work since 1984, Claimant had voluntarily withdrawn from the workforce.

■■■ Employer contends that, nevertheless, considering the totality of the circumstances, Claimant voluntarily withdrew from the workforce.[2] *See City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)*, 4 A.3d 1130, 1138 (Pa.

Cmwlth.2010) (*en banc*), *appeal granted*, —— Pa. ——, 17 A.3d 917 (2011) (stating that an employer need not prove the availability of suitable work when the employer proves by a totality of the circumstances that the claimant has voluntarily retired from the workforce). In particular, Employer argues that Claimant's receipt of Social Security Disability benefits, which is based on her inability to engage in substantial gainful activity,[3] establishes that Claimant has voluntarily withdrawn from the workforce. *See id.* at 1137 (stating that there are different types of disability pensions, including a disability pension that means the recipient is unable to engage in substantial gainful activity). We agree with Employer that, because Claimant sought a disability pension that was based on her inability to engage in substantial gainful activity and because Claimant's work injury did not prevent Claimant from engaging in substantial gainful activity, Claimant voluntarily withdrew from the workforce.[4]

In *Keene*, this court noted that the receipt of Social Security Disability benefits could be evidence that the claimant's work

---

2. Employer points out that, in *Department of Public Welfare/Norristown State Hospital v. Workers' Compensation Appeal Board (Roberts)*, 29 A.3d 403, 407–08 (Pa.Cmwlth.2011), this court held that the employer proved that the claimant withdrew from the workforce by establishing that: (1) the claimant sought and received a retirement pension; (2) the claimant sought and received Social Security Disability benefits, which "precluded him from working"; and (3) the claimant failed to seek work for two years after receiving a Notice of Ability to Return to Work.

3. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act also provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

4. A claimant who has no intention of seeking employment has voluntarily withdrawn from the workforce. *Vitelli v. Workmen's Compensation Appeal Board (St. Johnsbury Trucking Co.)*, 157 Pa.Cmwlth. 589, 630 A.2d 923, 926 (1993).

injury forced him or her out of the labor market. 21 A.3d at 246 n. 8. Indeed, if a WCJ finds that a claimant suffers from a work injury and no other non-work-related medical condition, then the receipt of Social Security Disability benefits can mean only that the claimant's work injury has forced him or her out of the labor market.[5] On the other hand, if the WCJ finds that the claimant suffers from a work injury and non-work-related medical conditions and that the work injury does not prevent the claimant from working, then the receipt of Social Security Disability benefits can mean only that the claimant is unattached to the workforce for reasons unrelated to the work injury.

Here, Claimant suffered from a work injury that limited Claimant to light-duty work, but she also suffered from non-work-related medical conditions that limited Claimant further.[6] Because of the latter conditions, Claimant chose to apply for Social Security Disability benefits. To continue her receipt of those benefits, Claimant can work only through Social Security's "Ticket to Work" program,[7] but there is no evidence in this case that Claimant participates in that program. Thus, Claimant's decision to receive Social Security Disability benefits shows that she has voluntarily withdrawn from the workforce for reasons unrelated to the work injury.[8]

Accordingly, we affirm.

Judge SIMPSON concurs in the result only.

### ORDER

AND NOW, this 13th day of January, 2012, the order of the Workers' Compensation Appeal Board, dated May 3, 2011, is hereby affirmed.

---

5. A claimant can rebut the presumption that he or she has voluntarily withdrawn from the workforce by showing that he or she was forced to withdraw from the workforce due to the work injury. *Roberts*, 29 A.3d at 407.

6. Because the work injury limited Claimant to light-duty work, but all of Claimant's medical conditions limited Claimant to sedentary work, it would be pointless for us to require Employer to establish the availability of light-duty work. *Cf. Vitelli*, 630 A.2d at 926 (stating that, once a claimant has removed himself from the workforce, it would be pointless for the employer to provide available work).

7. An individual receiving Social Security Disability benefits may participate in the "Ticket to Work" program. *See* 42 U.S.C. § 1320b–19 (establishing the Ticket to Work and Self–Sufficiency Program, which allows persons

receiving Social Security Disability benefits to receive employment services); *see also* 20 C.F.R. § 411.105 (stating that the purpose of the Ticket to Work program is to enable persons receiving Social Security Disability benefits to obtain services necessary to find, enter and retain employment, thereby reducing their dependency on benefits).

8. The reason Employer prevails in this case is because Claimant's work injury was not the basis for her receipt of Social Security Disability benefits. As indicated, if Claimant received Social Security Disability benefits as a result of the work injury, then the receipt of such benefits would support Claimant's continued entitlement to workers' compensation benefits.