# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hi-Tech Flooring, Inc.,        :
           Petitioner       :
                           :
         v.               :    No. 12 C.D. 2020
                           :    Argued: June 23, 2022
Workers' Compensation        :
Appeal Board (Santucci),         :
           Respondent    :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
PRESIDENT JUDGE COHN JUBELIRER      FILED: August 9, 2022

Hi-Tech Flooring, Inc. (Employer) petitions for review of the Workers' Compensation Appeal Board's (Board) December 3, 2019 Order that reversed in part and affirmed in part the Workers' Compensation Judge's (WCJ) December 19, 2018 Decision. The WCJ denied Employer's Petition to Terminate Benefits (Termination Petition) after finding that Michael Santucci (Claimant) was not fully recovered from a work-related injury,[1] but granted Employer's Petition to Suspend Benefits (Suspension Petition) after finding that Claimant voluntarily left the workforce by accepting a pension from the Bricklayers and Allied Crafts Union, Local 1 (Union) and Social Security Disability (SSD) benefits and not looking for new employment. The Board reversed the grant of the Suspension Petition, concluding that the totality of the circumstances did not support a finding that Claimant had voluntarily left the workforce. On appeal, Employer argues that the Board erred because the totality of the circumstances show that Claimant voluntarily

---

[1] Employer did not challenge this determination. As such, it is not at issue in this appeal.

retired by taking the Union pension and SSD benefits for conditions beyond the work injury and admitting to not looking for work since the injury occurred. Because we determine that the Board did not err in concluding that the totality of the circumstances does not support the WCJ's determination that Claimant voluntarily retired, we affirm the Board's Order.

## I.    BACKGROUND

### A. *Proceedings Before the WCJ*

Claimant, a tile setter, has been a Union member since 1985. (WCJ Decision, Findings of Fact (FOF) ¶ 10(e).[2]) On August 18, 2014, "Claimant sustained a work-related injury" in the form of a right knee contusion. (*Id.* ¶ 1.) Thereafter, Employer issued a Notice of Temporary Compensation Payable accepting the work injury and providing for $855.93 per week in temporary total disability benefits based on Claimant's average weekly wage of $1,283.90. (*Id.*) On May 4, 2017, a different WCJ denied Employer's first termination petition, finding that "Claimant suffer[ed] from ongoing progressive degenerative changes of the right knee as a result of the August 18, 2014 work incident[,] from which [Claimant had] not fully recovered" as testified to by Claimant's medical expert, Leonard Brody, M.D. (*Id.* ¶¶ 2, 12.)

On September 5, 2017, Employer filed the current Termination Petition, alleging that Claimant had fully recovered from the work injury based on an August 18, 2017 independent medical evaluation (IME) by Christopher Selgrath, D.O. (*Id.* ¶¶ 3, 5.) On February 21, 2018, Employer filed its Suspension Petition, alleging that

---

[2] The WCJ's Decision is found at Certified Record Item 7 and pages 6 through 14 of the Reproduced Record. Employer's Reproduced Record does not use a small "a" after the page numbers as required by Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173 ("[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . followed . . . by a small a . . . ."). For consistency, we will cite to the pages as set forth in the Reproduced Record.

2

Claimant had voluntarily left the workforce by accepting a pension from the Union on October 1, 2017, and receiving SSD benefits for physical injuries or conditions beyond the work-related right knee injury. (*Id.* ¶ 4.)

Employer submitted the December 14, 2017 deposition of Dr. Selgrath in support of its Termination Petition, who testified as follows.[3] (*Id.* ¶ 5.) Dr. Selgrath performed an IME of Claimant and, based upon the history provided, records reviewed, and examination of Claimant, opined that Claimant's job duties had caused a temporary flare up of Claimant's symptoms but did not cause any permanent change or damage to the cartilage of the right knee. (*Id.* ¶ 5(a)-(b), (d).) Accordingly, Dr. Selgrath concluded that Claimant had fully recovered, was back to Claimant's pre-injury baseline condition, as relative to Claimant's preexisting joint disease, and could return to the pre-injury employment position. (*Id.* ¶ 5(e)-(f).)

To support the Suspension Petition, Employer submitted a pension packet, the paperwork Claimant submitted to the Union in connection with the pension benefits application, and a copy of Claimant's SSD Application, Decision, and Award Letter, awarding permanent disability benefits. (*Id.* ¶¶ 7-9.) In the paperwork associated with Claimant's pension benefits submitted to the Union,[4] Claimant attested that the last date of employment was August 18, 2014, and that he requested retirement benefits based on being disabled from his trade as a tile setter to begin on April 10, 2017. (*Id.* ¶ 8.) Claimant's pension application asserted total, permanent disability based on "diagnoses for right shoulder pain, neck pain, [and] right facet arthropathy," such that Claimant has "a disability as defined in the Social Security

---

[3] Dr. Selgrath's December 14, 2017 deposition testimony is found at Certified Record Item 23 and pages 188 through 258 of the Reproduced Record.

[4] This paperwork is found at Certified Record Item 25 and pages 298 through 318 of the Reproduced Record.

Act[5] since October 7, 2015." (*Id.*) In the SSD Decision,[6] Claimant was awarded benefits as of April 2016 based on the following conditions: "herniated discs with constant pain – cervical; lumbar spine condition with constant pain; prior right knee surgery with remaining pain; left knee impingement undiagnosed; arthritis of both ankles; numbness of the left arm; carpal tunnel; gout; high blood pressure; and high cholesterol." (*Id.* ¶ 9.) Further, the SSD Decision determined that Claimant suffered from the following impairments: "lumbar and cervical disc disease, status post C5-6 cervical discectomy and fusion; bilateral knee degenerative osteoarthritis, status post bilateral arthroscopic procedures; right hip degenerative joint disease; and status post total hip replacement." (*Id.*) The SSD Decision discussed the specifics of each of these impairments, including the right knee injury, explaining that the results of Claimant's 2014 magnetic resonance imaging (MRI) after the work-related incident showed a meniscus tear, bursitis, and osteoarthritis, and, as a result, Claimant underwent surgery to address the meniscus tear and the osteoarthritis. (Reproduced Record (R.R.) at 311.) The SSD Decision also discussed the resulting synovitis in Claimant's right knee and ongoing right knee pain. (*Id.* at 312.) Based on these injuries and conditions, the SSD Decision explained that Claimant was completely disabled, unable to perform Claimant's vocation as a tile setter, and, given Claimant's age, education, work experience, and residual functional capacity, there were "no jobs that exist in significant numbers in the national economy that [C]laimant can perform[.]" (*Id.* at 313.) The SSD Award Letter explained that, in light of Claimant's receipt of workers' compensation benefits from the work-related

---

[5] 42 U.S.C. §§ 301-1397mm.

[6] The SSD Decision is found in Certified Record Item 31 and on pages 308 through 318 of the Reproduced Record.

4

injury, the Social Security Administration would be withholding the full amount of Claimant's SSD benefits and only providing $5.00 per month. (*Id.* at 322.)

Claimant testified twice, once by deposition and once before the WCJ, as follows.[7] (FOF ¶¶ 6, 10.) Claimant continues to experience pain in the right knee located on both sides of the kneecap and behind the kneecap, which Claimant described as sometimes excruciating. (*Id.* ¶¶ 6(a), 10(b).) Claimant uses an ACE bandage daily for the pain, and rest helps alleviate this pain. (*Id.* ¶¶ 6(b), 10(b).) Despite the pain, Claimant remains able to drive, perform home exercises, and "do household chores such as vacuuming, cleaning dishes, and food shopping." (*Id.* ¶ 10(b).) Claimant receives treatment for the right knee from Dr. Brody every three months, but the third Synvisc injection, which Claimant received just prior to the May 2018 deposition, did not help and prior cortisone injections in 2017 provided only short-term relief. (*Id.* ¶¶ 6(c), 10(c).) Claimant also testified to being a member of the Union, receiving a pension from the Union beginning in October 2017, and receiving SSD benefits starting in 2017. (*Id.* ¶¶ 6(d), 6(f), 10(e).) At the August 14, 2018 hearing, Claimant stated that while sedentary work might be possible, there are no Union positions that provided such work, and "[a]ll [Claimant] really kn[ew] how to do is set tile." (R.R. at 349, 351.) Finally, Claimant testified to not having worked since 2014 and to not looking for work, as "[Claimant did not] know what other kind of work to look for." (FOF ¶ 10(a), (f); R.R. at 351.)

Claimant submitted two depositions from Dr. Brody, one taken in the prior termination proceeding and the one taken for the current termination and suspension

---

[7] Claimant's testimony is found at Certified Record Items 14 and 24, and pages 259 through 297 and 346 through 351 of the Reproduced Record.

proceeding.[8]  Dr. Brody first treated Claimant for the work injury on September 3, 2014.  (FOF ¶ 11(b).)  Dr. Brody ordered an MRI, which showed a medial meniscus tear, and then performed surgery on October 30, 2014.  (*Id.* ¶ 11(c).)  Dr. Brody diagnosed Claimant with ongoing progressive degenerative change in the right knee, which is the source of Claimant's pain, and related this condition to the August 18, 2014 work incident.  (*Id.* ¶ 11(e).)  Dr. Brody also diagnosed Claimant with "chronic synovitis of the entire joint of the right knee" and "aggravation of [the] right knee degenerative joint disease[.]"  (*Id.* ¶¶ 11(h), 12(b).)  He further explained that "if somebody has an aggravation of [a] pre[]existent degenerative change, when you see the patient, the diagnosis is degenerative change and that[ is] what we use."  (R.R. at 155.)  While recognizing that the meniscus surgery was successful and that Claimant has full range of motion and no instability in the right knee, Dr. Brody maintained that Claimant has not fully recovered from the meniscus tear.  (FOF ¶¶ 11(g)-(h), 12(b).)  In his more recent deposition taken in March 2018, Dr. Brody disagreed with Dr. Selgrath's opinion that Claimant was fully recovered and cleared to return to the pre-injury position.  Dr. Brody had not cleared Claimant to return to work at his pre-injury position, but acknowledged that, as it relates to the right knee injury, Claimant could probably perform sedentary work "with a proviso that he be able to sit or stand on an as-needed basis."  (*Id.* ¶ 12(b)-(c); R.R. at 140-41, 150.)  As for Claimant's left knee condition, Dr. Brody indicated that Claimant "would do better if his left knee was fine, but . . . his right knee in and of itself is problematic."  (R.R. at 152.)  There is no indication in Dr. Brody's testimony when, or if, he advised Claimant of Claimant's ability to perform sedentary work.

---

[8] Dr. Brody's November 30, 2016 and March 5, 2018 depositions are found, respectively, at Certified Record Items 16 and 17, and at pages 34 through 187 of the Reproduced Record.

6

*B. WCJ's Decision*

In a December 10, 2018 Decision, the WCJ credited Claimant's testimony and Dr. Brody's testimony regarding Claimant's symptoms and limitations associated with the work-related injury, Claimant was not fully recovered from the work injury, and Claimant was not capable of performing his pre-injury position due to the work injury. (FOF ¶¶ 13-14.) The WCJ rejected Dr. Selgrath's opinion of full recovery, finding that Dr. Brody was in a better position as both Claimant's treating physician and surgeon and that Dr. Selgrath's opinion was undermined by Claimant's credible testimony of ongoing complaints of pain. (*Id.* ¶ 14.) Accordingly, the WCJ found that Claimant had not fully recovered from the August 18, 2014 work injury and denied Employer's Termination Petition. (*Id.* ¶ 15; WCJ's Decision, Conclusions of Law (COL) ¶ 2; WCJ's Decision at 9.) However, in considering the Suspension Petition, the WCJ found that Claimant voluntarily left the workforce by retiring. (FOF ¶ 17; COL ¶ 3.) In so finding, the WCJ determined that "Claimant has chosen not to return to work" and that Claimant's "testimony established [that Claimant] has voluntarily retired[]" based on Claimant's "receipt of [the U]nion pension and [SSD] benefits and [Claimant's] failure to search for jobs[.]" (FOF ¶ 17.) The WCJ found the "retirement documentation," which listed all of the physical conditions for which Claimant is receiving the Union pension and SSD benefits, "competent and credible," and that "Claimant is retired" and is receiving a pension. (*Id.* ¶ 16.) Accordingly, the WCJ granted Employer's Suspension Petition. (WCJ's Decision at 9.)

*C. Board's Opinion*

Claimant then appealed to the Board, arguing the WCJ erred by concluding that Claimant had voluntarily left the workforce by retiring. (Board Opinion (Op.)

at 6.[9])  The Board agreed, explaining that, under *City of Pittsburgh v. Workers'* *Compensation Appeal Board (Robinson) (Robinson II)*, 67 A.3d 1194 (Pa. 2013),[10] an employer may seek a suspension of benefits if the employer can establish, by the totality of the circumstances, that the claimant has chosen to not return to the workforce, but that "[t]here is no presumption of retirement arising from the fact that a claimant seeks or accepts a pension[;] rather, the acceptance of a pension" only creates a permissive inference of such.  (Board Op. at 2-3.)  The Board further explained that if voluntary withdrawal is shown, a claimant then bears the burden to "show that either he or she is looking for work or has been forced to withdraw from the entire workforce because of his or her work-related injury" in order to avoid the suspension of workers' compensation benefits.  (*Id.* at 3 (citing *Keene v. Workers'* *Comp. Appeal Bd. (Ogden Corp.)*, 92 A.3d 897 (Pa. Cmwlth. 2014)).)  However, the Board added, "an employer cannot rely solely on a claimant's failure to seek work to prove voluntary retirement from the workforce, as an employer has a duty to make job referrals until a claimant voluntarily retires."  (*Id.*)

Applying this standard, the Board determined that the WCJ erred in finding that Employer had shown, by a totality of the circumstances, that Claimant had chosen not to return to the workforce.  (*Id.* at 5.)  Given that the WCJ found that Claimant continued to suffer from the work injury, that this injury prevented Claimant from returning to the pre-injury position, and that nothing in the record showed that Employer provided any job referrals or issued a Notice of Ability to Return to Work, the Board held that "the totality of the circumstances establishe[d]

---

[9] The Board's Opinion is found at Certified Record Item 10 and at pages 17 through 23 of the Reproduced Record.

[10] *Robinson II* affirmed this Court's decision in *City of Pittsburgh v. Workers'* *Compensation Appeal Board (Robinson I)*, 4 A.3d 1130 (Pa. Cmwlth. 2010).

8

only that Claimant was forced to take a disability pension and [] S[SD] benefits as a result of being physically disabled and not that [Claimant] intended to retire from the workforce." (*Id.* at 5-6.) Under *Keene*, the Board held that because "the totality of the circumstances did not amount to an actual retirement[,]" Employer could not "rely solely on Claimant's testimony that [Claimant] was not looking for work to support" voluntary retirement. (*Id.*) The Board concluded that "Claimant did not voluntarily remove himself from the workforce, but, in fact, [the] work-related disability was preventing [Claimant] from obtaining further employment." (*Id.*) Accordingly, the Board reversed the WCJ's grant of Employer's Suspension Petition. (*Id.* at 6-7.) Employer has filed a petition for review with this Court.[11]

## II.   PARTIES' ARGUMENTS

Employer argues that the WCJ properly determined that it met its burden of showing that Claimant voluntarily left the workforce by retiring and that the Board erred in reversing that decision. To support this position, Employer points to Claimant's admission during the hearing before the WCJ that Claimant has not worked since 2014 and was not looking for work, demonstrating that Claimant has no intention to seek further employment. Further, Employer argues that the WCJ properly found that Claimant's Union pension and SSD benefits are not based on Claimant's work-related injuries, as neither the Union disability pension documentation nor the SSD Decision reference Claimant's right knee injury. (Employer's Brief (Br.) at 16, 23-24.) Accordingly, Employer compares the present

---

[11] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. "Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings." *Rosenberg v. Workers' Comp. Appeal Bd. (Pike Cnty.),* 942 A.2d 245, 249 n.4 (Pa. Cmwlth. 2008).

9

case to *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson)*, 669 A.2d 911 (Pa. 1995), in which the claimant's benefits were suspended based on the claimant's acceptance of a pension and SSD pension benefits and admission to not seeking employment. Therefore, Employer maintains that the Board erred and requests that its Order be reversed.

Claimant responds that the Board properly reversed the WCJ's Decision. Claimant argues that, pursuant to *Schmidt v. Workmen's Compensation Appeal Board (Fetch)*, 594 A.2d 812 (Pa. Cmwlth. 1991), there was no voluntary retirement because Claimant's acceptance of the Union pension and SSD benefits was the result of the work injury, which rendered Claimant unable to continue employment in the pre-injury position. Because the "acceptance of a pension entitles the employer only to a permissive inference that the claimant has retired," *Robinson II*, 67 A.3d at 1209, Claimant maintains that the WCJ erred in concluding, based on the totality of the circumstances, that Claimant had retired based upon the receipt of the Union pension and SSD benefits, particularly where the WCJ found that "the work-related injury [prevented] Claimant from working." (Claimant's Br. at 16-18.) In addition, Claimant asserts that the Board correctly held that "Claimant's failure to look for work alone could not prove [] voluntary retirement from the work[]force[]" under *Keene*, 92 A.3d at 900-01. (*Id.* at 17-18.) Accordingly, Claimant asks this Court to affirm the Board's Order.

## III. ANALYSIS

"The Pennsylvania Workers' Compensation Act[12] [(Act)] is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Robinson II*, 67 A.3d at 1202

---

[12] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

n.8 (quoting *Reifsnyder v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 883 A.2d 537, 542-43 (Pa. 2005)). Generally, a claimant who has been forced into retirement as a result of a work-related injury may continue to receive workers' compensation benefits. *Henderson*, 669 A.2d at 913; *City of Philadelphia v. Workers' Comp. Appeal Bd. (Rooney)*, 730 A.2d 1051, 1053 (Pa. Cmwlth. 1999). However, an employer may seek a suspension of those benefits where a claimant voluntarily leaves the workforce rather than being forced into retirement because of the work injury. *Henderson*, 669 A.2d at 913; *Turner v. Workers' Comp. Appeal Bd. (City of Pittsburgh)*, 78 A.3d 1224, 1228 (Pa. Cmwlth. 2013).

An employer bears the burden of showing that a claimant has retired. *Robinson II*, 67 A.3d at 1209. The Supreme Court has rejected attempts to create a rebuttable presumption that a claimant has voluntarily retired from the entire workforce merely from the fact that a claimant has accepted some type of pension benefit. *Id.* Specifically, the Supreme Court stated "[t]here is no presumption of retirement arising from the fact that a claimant seeks or accepts a pension, much less a disability pension; rather, the worker's acceptance of a pension entitles the employer only to a permissive inference that the claimant has retired." *Id.* at 1209. While a presumption requires a factfinder to find an elemental fact upon proof of a basic fact, a permissive inference, on the other hand, "allows, but does not require, the factfinder to infer the elemental fact from proof of the basis fact and places no burden of persuasion or production on the defendant." *Id.* at 1204 (citation omitted). In short, the burden of persuasion remains with the employer. *Id.*

In *Robinson I*, a plurality of this Court held that to meet its burden of showing a claimant retired, "an employer must show, by the totality of the circumstances, that the claimant has chosen not to return to the workforce." 4 A.3d at 1138.

"Circumstances that could support a holding that a claimant has retired include: (1) where there is no dispute that the claimant retired; (2) the claimant's acceptance of a retirement pension; or (3) the claimant's acceptance of a pension and refusal of suitable employment within [the claimant's] restrictions." *Id.* In affirming our plurality decision, the Supreme Court stated that the totality of the circumstances "test is simply another way of saying that the factfinder must evaluate all of the relevant evidence in determining whether a worker has retired from the workforce" and that this approach was consistent with precedent. *Robinson II*, 67 A.3d at 1209. "If the employer produces sufficient evidence to support a finding that the claimant has voluntarily left the workforce, then the burden shifts to the claimant to show that there in fact has been a compensable loss of earning power." *Id.* at 1209-10.

Here, the WCJ found Employer met its burden of proving voluntary retirement because Claimant accepted the Union pension and SSD benefits and admitted to not having looked for work. (FOF ¶ 17.) The Board determined these facts were insufficient for Employer to have met its burden given that: Claimant's Union pension and SSD benefits were disability related; the WCJ accepted the testimony of Dr. Brody and Claimant that Claimant continued to suffer from a work-related injury that precluded a return to the pre-injury position; and Claimant's failure to look for work is not alone sufficient to find voluntary retirement under *Keene*, 92 A.3d at 900-01. (Board Op. at 3, 6.) Upon review of the record, we agree with the Board that the totality of the circumstances does not support the conclusion that Claimant retired from the entire workforce.

As to Claimant's receipt of the Union pension and SSD benefits, our precedent indicates that the type of pension and benefits that a claimant receives is relevant to the issue of voluntary retirement. We discussed the difference in the types of

disability benefits in *Burks v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 36 A.3d 639 (Pa. Cmwlth. 2012). There, the claimant suffered from numerous preexisting conditions and sustained a work-related injury to the right knee, for which she received workers' compensation benefits pursuant to a notice of compensation payable. The claimant applied for, and received, SSD benefits based on the non-work-related conditions. *Burks*, 36 A.3d at 643. Decades later, the employer issued a Notice of Ability to Return to Work based on a physician's opinion that, as to the claimant's work injury, the claimant could perform full-time sedentary and occasional light-duty work, to which the claimant did not respond. The employer subsequently sought to suspend the claimant's workers' compensation benefits, alleging that the claimant was capable of performing work but had voluntarily removed herself from the workforce and that the claimant's receipt of SSD benefits was based on the medical conditions unrelated to her work injury. The WCJ granted the suspension, finding that the claimant was capable of full-time, light-duty work and that the claimant had accepted SSD benefits for "non-work-related medical conditions[.]" *Id.* at 643. We explained that

> if a WCJ finds that a claimant suffers from a work injury and no other non-work-related medical condition, then the receipt of Social Security Disability benefits can mean only that the claimant's work injury has forced him or her out of the labor market.[] On the other hand, if the WCJ finds that the claimant suffers from a work injury and non-work-related medical conditions and that the work injury does not prevent the claimant from working, then the receipt of Social Security Disability benefits can mean only that the claimant is unattached to the workforce for reasons unrelated to the work injury.

*Id.* (footnote omitted). Thus, we held that the claimant had voluntarily withdrawn from the workforce given that the "work injury did not prevent [the c]laimant from engaging in substantial gainful activity," and the claimant had accepted the SSD

benefits "based on her inability to engage in substantial gainful activity" and "non-work-related medical conditions." *Id.* at 642. Because this demonstrated that the claimant took the SSD benefits "for reasons **unrelated** to the work injury[,]" we affirmed the suspension of the claimant's benefits. *Id.* at 643 (emphasis added). The Court noted that the employer prevailed there "[b]ecause [the c]laimant's work injury was not the basis for [] receipt of [SSD] benefits" but if it was, "then the receipt of such benefits would support [the c]laimant's continued entitlement to workers' compensation benefits." *Id.* at 643 n.8.

Here, Employer argues that Claimant's Union pension and SSD benefits are not based on Claimant's work-related injuries, asserting that neither the Union disability pension documentation nor the SSD Decision reference Claimant's work-related right knee injury. (Employer's Br. at 16, 23-24.) To the contrary, the SSD Decision states the following in regard to Claimant's work-related injury:

> A review of the medical evidence reflects consistent complaints of right knee pain since suffering a work-related injury in August 2014[.] . . . A September 2014 MRI of the right knee demonstrated bursitis anterior to the proximal tibia, an oblique tear of the posterior horn and medial meniscus, and retropatellar chondromalacia and osteoarthritis[.] . . . Therefore, in October 2014, [C]laimant underwent an arthroscopy of the right knee with a partial medial menisectomy[] and debridement of degenerative joint disease[.] . . . Follow-up orthopedic treatment records detail ongoing symptoms including significant quadriceps atrophy, a small effusion, and some bogginess indicative of a synovitis[.] . . . Updated orthopedic treatment records detail persistent complaints of right greater than left knee pain with positive clinical findings relative to the right knee including pain on palpation, persistent quadriceps atrophy, and an effusion[.] . . . Weight-bearing x-rays of the right knee revealed slightly decreased joint space medically.

(R.R. at 311-12.) The SSD Decision's description of Claimant's right knee injury, and the various treatments associated with that injury, is consistent with Dr. Brody's

14

later testimony that he ordered the MRI, performed the surgery, diagnosed Claimant with a torn medial meniscus and aggravation of the degenerative joint disease as Claimant's work-related injuries, and continued to treat those injuries. (FOF ¶¶ 11(b)-(c), (e), 12(b).) That the SSD Decision refers to the right knee injury as being "degenerative" is not determinative because Dr. Brody explained that an aggravation of a preexisting degenerative condition is diagnosed as a degenerative condition. (R.R. at 155.)

The SSD Decision found that Claimant was entitled to SSD benefits because: Claimant could not perform his "past relevant work" (tile setting), which is the work Claimant remains unable to perform due to the work injury; Claimant's acquired job skills did not transfer to other occupations; and there were no jobs in sufficient numbers that Claimant could perform given his age, education, and work experience. (*Id.* at 307, 309-10, 313.) Last, in calculating Claimant's SSD benefit amount, the SSD Decision noted that "[t]he workers' compensation offset provisions at" 20 C.F.R § 404.408[13] "may be applicable." (*Id.* at 307.) The reduction of Claimant's SSD benefits based on his receipt of workers' compensation benefits was confirmed in the SSD Award letter. (*Id.* at 322.) This all demonstrates that the SSD Decision considered and relied on Claimant's work-related right knee injury, as well as the other conditions, in concluding that Claimant was totally disabled.

Accordingly, unlike in *Burks*, here it cannot be said that "[C]laimant suffers from a work injury and non-work-related medical conditions and that the work injury does not prevent the claimant from working," as the WCJ found that Claimant had

---

[13] The regulation at 20 C.F.R. § 404.408(a)(1)(i) provides that SSD benefits must be reduced if, *inter alia*, the recipient "is also entitled to periodic benefits under a workers' compensation law or plan . . . for that month for a total or partial disability (whether or not permanent)."

15

**not** recovered from the work-related injury and credited Dr. Brody's determination that Claimant was not fully recovered or released to the pre-injury position. *Burks*, 36 A.3d at 643. On the other hand, Claimant does not "suffer [only] from a work injury and [does have] . . . other non-work-related medical condition[s.]" *Id.* Unlike the claimant in *Burks* who accepted SSD benefits "for reasons unrelated to the work injury," *id.*, Claimant received the SSD benefits based, in part, on his work-related injury and lack of transferrable skills, which prevented Claimant from working. Therefore, Claimant's receipt of SSD benefits in this matter suggests "that [ C]laimant's work injury forced him . . . out of the labor market." *Id.* at 642-43.

As to the Union disability pension, which does not identify a right knee injury as one of the disabling conditions, it is undisputed that Claimant's work-related right knee injury caused Claimant to stop performing his pre-injury position in August 2014, nearly three years before Claimant applied for this pension, and remained disabling as to that position per the WCJ's findings in the present proceedings. Claimant's Union disability pension relates to the very position that the WCJ already found Claimant could not, and cannot, perform due to the work injury. That Claimant might have some other conditions that also affect his ability to perform that work does not eliminate the fact that Claimant's unresolved work-related injury prevents him from doing so. Thus, Claimant's receipt of a disability pension that is based on his total and permanent disability **from his trade**, (R.R. at 306), a trade from which he is already disabled due to the work-related injury, does not speak to Claimant's voluntary removal from the entire workforce.[14] As in *Robinson II*, Claimant's "receipt of a **disability** pension . . . shows that [Claimant] could not perform [the] time-of-injury position; it does not necessarily follow that [Claimant]

---

[14] This does not mean that such information would be irrelevant if Claimant's work-related injury was to resolve.

16

. . . decided to forgo all employment." *Robinson II*, 67 A.3d at 1205 (emphasis in original). Moreover, the WCJ specifically found Claimant has not fully recovered from the work-related injury and is unable to return to his pre-injury position. (FOF ¶ 15.)

Employer argues that this case is analogous to *Henderson* and the Board's Order should be reversed based on *Henderson*. (Employer's Br. at 24-25.) There, the Supreme Court upheld the Board's conclusion of voluntary retirement where the claimant accepted a retirement pension and Social Security old age benefits and admitted to not seeking employment. However, the Social Security benefits and retirement pension at issue in *Henderson* were based on the claimant's age—not on disability. In contrast, Claimant here accepted a disability pension from the Union and SSD benefits, as opposed to age-based retirement benefits. Given this difference in the type of pension and SSD benefits in the present case, and in light of the above circumstances and precedent, *Henderson* does not require a different result.

As for the other evidence cited by the WCJ to support that Claimant retired, namely his failure to search for jobs, the totality of the circumstances shows Claimant did not look for other work because he did not "know what other kind of work to look for." (R.R. at 351.) While Claimant acknowledged that sedentary work might be possible, he testified that he was not aware of any Union positions that provided such work. (*Id.* at 349.) Furthermore, the WCJ found that Claimant worked as a tile setter for 30 years, and Claimant credibly testified that "[a]ll he really kn[ew] how to do [wa]s to set tile." (*Id.* at 351.) This is consistent with the conclusion of the SSD decision that Claimant's acquired job skills did not transfer to other occupations. (*Id.* at 313.) This does not evidence an intent to retire from the

17

workforce but, rather, a lack of understanding what options may be available to Claimant to remain in the workforce.

## IV.    CONCLUSION

In summary, as the totality of the circumstances in this case, including all relevant and credible evidence, do not support Employer's assertion that Claimant voluntarily retired and left the workforce, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judge Dumas did not participate in the consideration of this matter.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hi-Tech Flooring, Inc.,          :
            Petitioner      :
                        :
           v.         :   No. 12 C.D. 2020
                        :
Workers' Compensation      :
Appeal Board (Santucci),     :
            Respondent   :

# O R D E R

**NOW**, August 9, 2022, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge