IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Wilkes-Barre,           :
                                       :
                   Petitioner   :
                                       :
          v.                 :  No. 289 C.D. 2021
                                       :  Submitted:  May 27, 2022
Thomas Snyder (Workers'    :
Compensation Appeal Board),  :
                                       :
                 Respondent :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                             FILED:  April 20, 2023

City of Wilkes-Barre (Employer) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) February 18, 2021 order that reversed the decision of a Workers' Compensation Judge (WCJ) denying Thomas Snyder's (Claimant) petition to reinstate his disability benefits because he voluntarily retired from the workforce.  Upon review, we affirm.

The relevant facts as found by the WCJ are as follows.  Claimant was employed as a firefighter by Employer when he was injured at work on October 1, 2017, after he tripped over some equipment and fell, injuring his right shoulder. WCJ's Opinion, 1/31/2020, at 3. *See* Certified Record (C.R.) at Item No. 5. Employer recognized Claimant's injury by way of an Amended Notice of

Compensation Payable dated August 7, 2018, for a strain or tear to the right shoulder, and Claimant began receiving temporary total disability benefits (TTD) as of October 2, 2017. WCJ's Opinion at 3. Claimant's TTD benefits were suspended as of August 6, 2018, when Claimant returned to work in a modified-duty position. *Id.* Claimant continued working in a modified-duty position until November 26, 2018, when Claimant submitted a resignation letter confirming that he was retiring as of November 26, 2018, due to a work-related injury. *Id.* at 3-4; *see also* Reproduced Record (R.R.) at 114a. On April 11, 2019, Claimant filed a petition to reinstate his TTD benefits, in which he alleged that he retired due to his work-related injury, "'when it was determined that he would not ever be physically capable of returning to his pre-injury job as a firefighter and that the temporary, light-duty job would no longer be available.'" WCJ's Opinion at 3.

The WCJ held hearings on Claimant's petition to reinstate on May 7, 2019, August 22, 2019, and October 10, 2019, at which Claimant and Employer appeared, were represented by counsel, and presented testimony and documents. WCJ's Opinion at 3. Regarding his retirement, Claimant testified "that he retired because he received a letter from Dr. [Michael] Banas, [Claimant's treating physician,] dated November 24, 2018, indicating that he had not recovered from the injury and was not progressing." *Id.* at 4. Claimant testified that he was receiving Heart and Lung benefits,[1] and that it was "his understanding that those benefits were

---

[1] The act commonly known as the "Heart and Lung Act," Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638, entitles certain employees, including Claimant, who serve the public in essential, high-risk professions, who are injured performing their work duties, and who are temporarily unable to perform those duties, to the payment of their full salaries. In these circumstances, both WC and Heart and Lung benefits are paid concurrently, but any WC payments that the employee receives are required to be turned over to the public employer. Section 1(a) of the Heart and Lung Act, 53 P.S. §637(a); *Commonwealth v. Workers' Compensation Appeal Board (Piree)*, 182 A.3d 1082, 1087 (Pa. Cmwlth. 2018).

2

temporary, such that he either had to return to work full duty or leave the fire department." *Id.* Claimant admitted that no Employer representative ever told him that either his Heart and Lung or WC benefits would be ending. *Id.*

Claimant also presented testimony from Michael Bilski, a fire department captain and union president (Union President). WCJ's Opinion at 4. The Union President testified that he believed Claimant's modified-duty position was supposed to be temporary, that other injured firefighters who were unable to return to work had retired, and that when they did, the WC benefits "'just kind of straightened itself out,'" and the union did not "'handle that at all.'" *Id.* The Union President also testified that he never received any notification that Employer intended to end Claimant's WC or Heart and Lung benefits. *Id.* Both parties agreed that "at no time did [Employer] tell Claimant that his modified-duty work would no longer be available to him." *Id.*

Employer presented testimony from Nicole Ference, Human Resources Director for Employer (HR Director). WCJ's Opinion at 4. The HR Director testified that, although the modified work assignment policy was eliminated from the collective bargaining agreement (CBA) between Employer and the Union effective January 1, 2019, after Claimant had already retired, Employer did not eliminate its modified-duty work program. *Id.* The HR Director confirmed that Employer continues to make modified-duty work available on a case by case basis, "meaning someone looking for modified-duty work would need to present something to the Chief and HR to see if anything was available at that time." *Id.* at 4-5.

The WCJ considered and compared the testimony of Claimant, the Union President, and the HR Director. As to the issue of Employer's policy

3

regarding modified-duty work, the WCJ found Claimant and the Union President to be credible in part, but found the testimony of the HR Director "to be more credible and persuasive." WCJ's Opinion at 5. The WCJ specifically credited the HR Director's testimony that, although Employer's modified work policy was removed from the CBA, "that did not indicate that modified-duty work was no longer going to be available" with Employer. *Id.* Likewise, the WCJ credited the HR Director's testimony that, although modified-duty assignments were temporary, "there was no evidence presented that the modified-duty work Claimant was performing was ever taken away or specifically limited in duration." *Id.* The WCJ specifically rejected Claimant's testimony that he retired due to his work injury, "when the record reflects that he voluntarily chose to retire, and is now, after the fact, attempting to attribute it to his work-related injury for secondary gain." *Id.* The WCJ also found the testimony of the Union President carried little weight because he conceded that he was not involved in WC matters. *Id.*

The WCJ also considered testimony from Claimant's treating physician and from Employer's expert, Dr. Ronald DeSimone (Employer's expert). Claimant's treating physician submitted a letter dated November 24, 2018, wherein he opined that Claimant had reached maximum medical improvement regarding his right shoulder injury, required work restrictions, was permanently disabled, and "was not capable of returning to his occupation as a firefighter in an unrestricted capacity." WCJ's Opinion at 5; *see also* R.R. at 111a. Employer's expert opined that Claimant was progressing well following his shoulder surgery, and the doctor anticipated an eventual, full recovery, and he also agreed that Claimant was restricted to light-duty work at this time. WCJ's Opinion at 6.

The WCJ made the following findings regarding Claimant's retirement.

4

> There is no dispute that Claimant voluntarily retired as of November 26, 2018; that modified-duty work at or above his pre[-]injury wages was being made available to him at that time within his restrictions; that Claimant was not told that the modified-duty work was no longer available to him; and that no physician totally disabled Claimant from work due to his work-related injury at that time. Regardless of whether Claimant correctly or incorrectly believed that at some point in the future the modified[-]duty work would no longer be available to him, Claimant voluntarily removed himself from the workforce by retiring despite modified[-]duty work at or above his pre-injury wages remaining available to him within his restrictions. Therefore, Claimant's loss in earning power as of November 26, 2018, was due to Claimant's voluntary removal from the work[]force and not Claimant's work-related history.

WCJ's Opinion at 5, Finding of Fact (FF) No. 13. The WCJ further found that, based on the credited testimony of the HR Director, that "although [the HR Director] confirmed that modified-duty work assignments were temporary, there was no evidence presented that the modified-duty work Claimant was performing was ever taken away or specifically limited in duration." WCJ's Opinion at 5, FF No. 14.

Based on these findings, the WCJ concluded that "Claimant has failed to establish that compensation benefits should be reinstated as the evidence of record establishes that Claimant voluntarily removed himself from the workforce as of November 26, 2018, despite suitable work at or above his pre-injury wages remaining available to him within his restrictions." WCJ's Opinion at 6, Conclusion of Law (CL) No. 2. [2]

---

[2] In his petition to reinstate, Claimant also sought to modify the description of his injury. The WCJ found Employer's expert more credible than Claimant's treating physician as to the description of Claimant's injury and concluded that Claimant had failed to establish that the description of his injury was incorrect. WCJ's Opinion at 6. Claimant did not appeal this issue to the Board or to this Court, so we will not address it further in this appeal.

Claimant appealed the WCJ's denial of his petition to reinstate to the Board, arguing that the WCJ erred when he concluded that Claimant's retirement was voluntary. In an order dated February 18, 2021, the Board reversed the WCJ's decision to deny reinstatement, determining that the WCJ erred in concluding that Claimant voluntarily retired. Board Opinion, 2/18/21, at 5. *See* C.R. at Item No. 8. The Board explained that the analysis of whether a claimant voluntarily retired was governed by *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)* (*Robinson I*), 4 A.3d 1130 (Pa. Cmwlth. 2010), *aff'd*, 67 A.3d 1194 (Pa. 2013) (*Robinson II*). Board Opinion at 2. The Board explained that, in *Robinson I*, our Court provided the applicable standard, as follows:

> In order to show that efforts to return a claimant to the workforce would be unavailing because a claimant has retired, an employer must show, by the totality of the circumstances, that the claimant has chosen not to return to the workforce. Circumstances that could support a holding that a claimant has retired include: (1) where there is no dispute that the claimant retired; (2) the claimant's acceptance of a retirement pension; or (3) the claimant's acceptance of a retirement pension and refusal of suitable employment within her restrictions.

*Robinson I*, 4 A.3d at 1138. Board Opinion at 2.

The Board summarized the relevant testimony of Claimant, the Union President, the HR Director, Claimant's treating physician, and Employer's expert. Board Opinion at 2-4. The Board recognized that both parties stipulated that Claimant retired once he learned that "he would not be allowed to return to his firefighting duties," and that Employer "did not tell Claimant that this modified-duty work would be no longer available to him." Board Opinion at 3; R.R. at 57a. The Board recognized the credited testimony of the HR Director, who testified that Employer did not make Claimant aware that modified-duty work might still be

6

available to him because he had already retired. Board Opinion at 3; R.R. at 105a. However, the Board also noted that the HR Director "agreed that modified-duty work was temporary in nature and that once a firefighter was permanently disabled from the firefighting duties, modified[]duty would no longer be available." Board Opinion at 3-4; R.R. at 108a.

The Board recognized that the WCJ has complete authority over credibility determinations, but the Board determined that the WCJ "erred in concluding that Claimant voluntarily retired." Board Opinion at 5. The Board recognized that Claimant submitted a retirement letter, but the Board concluded that "Claimant submitted this letter in belief that he would no longer be allowed to work in his modified-duty position" once he received the November 24, 2018 letter from his treating physician. *Id.* The Board evaluated the WCJ's findings, specifically FF No. 13 and FF No. 14, and concluded that the WCJ lacked substantial, competent evidence to make these findings, when, "in fact, the opposite was true." Board Opinion at 6. The Board explained:

> All witnesses testified that Claimant was permanently disabled from his firefighting duties, and [the HR Director], whom the WCJ found to be credible because of her superior knowledge of the modified[]work program, admitted that Claimant would no longer be eligible for modified-duty work if he was permanently disabled from his pre-injury position as a firefighter. The testimony that the "Modified Work Assignment Policy" was temporary in nature only bolsters that Claimant would not be eligible for modified work once he was taken out of work as a firefighter permanently. We therefore determine that the WCJ erred by disregarding these facts.

Board Opinion at 6.

The Board recognized that Claimant submitted a retirement letter, but concluded that "the relevant inquiry is one of a totality of the circumstances, which

7

the retirement letter is one fact taken into consideration," under *Robinson I*. Board

Opinion at 6. The Board continued:

> The other facts bely that Claimant voluntarily retired from the workforce, including that he had a note from his treating physician that his injury was permanent, that [the HR Director] admitted that Claimant would no longer be eligible for the modified-duty program, [and] that [Employer] did not offer Claimant another suitable position or dissuade Claimant in any way that he would be eligible still on a case-by-case basis despite the plain meaning of the elimination of the modified-duty program, and the absence [of] available work within his restrictions of expert testimony regarding his earning power. We therefore agree with Claimant that the retirement letter alone does not prove that he intended to withdraw from the workforce, but rather Claimant's correct belief that modified-duty work was no longer available to him.

Board Opinion at 6-7. As a result, the Board reversed the WCJ's decision and order,

and Employer then petitioned this Court for review.[3]

Employer argues that the Board erred in concluding that Claimant was

entitled to a reinstatement of benefits, when the WCJ found that Claimant voluntarily

removed himself from the workforce on November 26, 2018, while suitable

modified-duty work remained available to him at or above his pre-injury wages.

Employer asserts that the Board impermissibly usurped the WCJ's fact-finding

authority and substituted its own findings. Employer also claims that the Board erred

---

[3] Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 n.4 (Pa. Cmwlth. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992). The scope of review on questions of law is plenary and the standard of review is *de novo*. *Pitt Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 912 A.2d 206, 207 (Pa. 2006).

in reinstating Claimant's benefits when Claimant failed to present medical evidence that Claimant was forced to retire from the entire labor market. Claimant responds that the Board correctly concluded that he was entitled to a reinstatement of benefits when substantial evidence of record supported the finding that his retirement was not voluntary; that the Board did not usurp the WCJ's fact-finding authority; and that he was not required to provide medical evidence showing that he was forced to retire from the entire labor market.

The following framework governs our analysis of the question of whether the Board erred in concluding that Claimant's retirement was not voluntary. We are mindful that in workers' compensation cases, "the WCJ is the ultimate [factfinder] who must determine credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness'[s] testimony, in whole or in part, including that of medical witnesses." *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000). As this Court further stated, "[w]hile this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal." *Id.* Furthermore, in a substantial evidence analysis where, as here, both parties presented evidence, "it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). The issue of whether Claimant's retirement was voluntary presents a question of law, over which our scope of review is plenary, and the standard of review is *de novo. Pitt Ohio Express*, 912 A.2d at 207.

9

Our Courts have provided the relevant framework to determine whether a claimant has voluntarily retired, based on the totality of the circumstances. Where a claimant voluntarily retires, "it is the claimant who bears the burden of showing *either* that h[is] work-related injury has forced h[im] out of the entire workforce *or* that []he is looking for work after retirement." *Robinson I*, 4 A.3d at 1134 (emphasis in original). Our Court further explained:

> In order to show that efforts to return a claimant to the workforce would be unavailing because a claimant has retired, an employer must show, by the totality of the circumstances, that the claimant has chosen not to return to the workforce. Circumstances that could support a holding that a claimant has retired include: (1) where there is no dispute that the claimant retired; (2) the claimant's acceptance of a retirement pension; or (3) the claimant's acceptance of a retirement pension and refusal of suitable employment within [his] restrictions.

*Id.* at 1138.

Our Supreme Court affirmed our analysis in *Robinson I*, explaining that the totality of the circumstances test "is simply another way of saying that the factfinder must evaluate all the relevant evidence in determining whether a worker has retired from the workforce," where evidence that a claimant submitted a retirement letter or accepted a pension is just one factor. *Robinson II*, 67 A.3d at 1209. The Supreme Court directed that evidence that a claimant retired or accepted a pension entitles an employer

> only to a permissive inference that the claimant has retired. Such an inference, if drawn, is not on its own sufficient to establish that the worker has retired-the inference must be considered in the context of the totality of the circumstances. The factfinder must also evaluate all of the other relevant and credible evidence before concluding that the employer has carried its burden of proof.

10

*Id.*

Here, although the WCJ correctly found that Claimant submitted a retirement letter, and that Employer did not notify Claimant that his modified-duty position was ending on a specific date, the WCJ erred when he ignored the parties' stipulation that Claimant retired once he learned "he would not be allowed to return to his firefighting duties." R.R. at 57a. We agree with the Board that the record lacks substantial, credited evidence to support the WCJ's finding that Claimant voluntarily removed himself from the workforce "[r]egardless of whether Claimant correctly or incorrectly believed that at some point in the future the modified[-]duty work would no longer be available to him." WCJ's Opinion at 5. The WCJ erred by ignoring the credited testimony of the HR Director, where she "agreed that modified-duty work was temporary in nature and that once a firefighter was permanently disabled from the firefighting duties, modified-duty would no longer be available." R.R. at 108a.

We agree with the Board that the WCJ also erred when he found that "no physician totally disabled Claimant from work due to his work-related injury at that time," when the WCJ ignored the letter from Claimant's treating physician that deemed him unable to return to unrestricted firefighting duties because of his work injury, and the credited testimony from Employer's expert that also agreed that Claimant was restricted to light-duty work at that time. *See* WCJ's Opinion at 5, R.R. at 111a, 136a. Based on the credited testimony of Employer's HR Director, Claimant would no longer be eligible for modified-duty work if he was permanently disabled from his pre-injury position as a firefighter. Claimant was, in fact, deemed permanently disabled by his treating physician, which prompted his retirement.

11

Thus, Employer failed to carry its burden, under the totality of the circumstances, to show that Claimant's retirement was voluntary. *Robinson II*, 67 A.3d at 1209.

Further, because we conclude that Employer failed to carry its burden to prove Claimant's retirement was voluntary, we reject Employer's argument that Claimant was required to present medical evidence that he retired from the entire labor market. "For disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury." *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson)*, 669 A.2d 911, 913 (Pa. 1995). Because Claimant sustained his burden to prove that he was forced into retirement when his temporary, modified-duty work assignment would be eliminated when he was deemed unable to return to work as a firefighter, Claimant was not required to prove that he retired from the entire labor market. In sum, we discern no error in the Board's reversal of the WCJ's decision denying the reinstatement of Claimant's benefits.

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge


Judge Wallace dissents and wishes to be so noted.

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Wilkes-Barre,           :
                                       :

                Petitioner  :

                                       :

        v.                     : No. 289 C.D. 2021

                                       :

Thomas Snyder (Workers'    :
Compensation Appeal Board),  :

                                     :

            Respondent :

# **O R D E R**

AND NOW, this 20th day of April, 2023, the order of the Workers' Compensation Appeal Board dated February 18, 2021, is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge